May it please the Court, Douglas Nelson on behalf of late George Mousa. In this case there was an attempt to reopen it two years after the U.S.-led invasion of Iraq. However, we were rebuffed because conditions, in their opinion, had not changed enough in order to prove that as a Chaldean he would have a well-founded fear of return. But standing on its own merits and standing on the issue of past persecution, this petitioner clearly qualifies. It is clear that he suffered past persecution, and the courts should have found so. He was arrested and detained six times during his compulsory military service because he refused to join the Ba'ath Party, and during those brief detentions he was repeatedly abused. But more significantly, after he left the military and while he was in the private sector, he was detained for forty-seven days in terrible conditions and repeatedly beaten for the false accusation that he supported the Kurds. At the same time that he was detained and beaten, his sister, Maha, was being detained and beaten in a different cell, and he bears the guilt of her detention because he gave her the job which led to them being detained. In fact, he said in his testimony that he was constantly worried about his sister. This is the actor? That's correct. The emotional toll and the physical toll upon this respondent clearly meets the burden of past persecution. Does your petition for review ask us to look at the failure of the BIA to reopen? We included that. And we start with a yes or no? Yes. It does? We included that in the excerpts of record, copies of all the materials that we submitted. Stop my question. My question is, does the petition for review ask this court to review the failure or the BIA's denial of your motion to reopen? Yes, we are asking for that, but to... You just have a real hard time answering my questions, and the question is very simple. Does your petition for review ask us to look at the BIA's denial of your motion to reopen? The answer is no, isn't it? No, yes. Then on what basis do you ask us to review that? Referring to the four corners of our petition for review, no, it was not included because as yet the motion to reopen had not been done. However, the motion to reopen was done while these proceedings were pending, and we attempted to attach that to the excerpts of record to show that we had made efforts... Excuse me, the denial had not occurred when you filed the petition here? That's correct, Your Honor. So the denial happened while the case was pending here, and we attached that. In fact, it happened in 2005, much after the petition for review. After you had been filed. Okay, so I would like... Here we have, unlike the prior case, we have some apparent boilerplate language in the BIA decision, which is replicated in one of the, maybe it's Toma, one of the other cases as well, where the BIA, without expressly saying so, seems to go off on the alternative ground that even accepting the testimony as true, and the burden being shifted, therefore, that is the testimony about past persecution, the burden therefore being assumed to have shifted to the government, they find because there has been a monumental change in circumstances, which is language indicative of government having carried the burden of proof that everything now is hunky-dory in Iraq, and therefore, not only was the denial of asylum appropriate, but there's no fear of future persecution, which would defeat statutory eligibility for withholding of removal. Now, assuming that is a fair reading, and maybe you disagree with it, but assuming that is in substance what the BIA was doing, and assuming that we accept that they found the petitioner credible, and that these events happened, that brings the focus then to the finding of changed country conditions. Now, our jurisprudence on what we do in those circumstances, I will say, is a bit confusing, and I've been wrestling with it. Some panels, and some of our cases, remand to the BIA to reconsider. Others simply say, look, the BIA has addressed this, and we find it was insufficient evidence, therefore, we direct that it be remanded for consideration of asylum. But in some cases, I think, we've also said they've also qualified for withholding of removal, which is non-discretionary. So where does this case, in your view, fit on that spectrum? What is the relief that you think Laith Moosa is entitled to here? That this court should clearly find he suffered past persecution, and given the spans of time between the hearing and now, the case should be remanded to examine country conditions today. We had attempted to do that in 2005. It is our opinion that in 2003 and 2004, the government may have had an argument that there could possibly be a bright future in Iraq. But by 2005, 2006, and certainly today, the Chaldeans do not have a bright future in Iraq. And so we would ask the court to find clearly, because I think the board was unclear, that well, first, the board did find him credible. They did not sustain the IJ's credibility finding. But that this court find that he indeed did suffer past persecution and remand the case so that it could be examined in light of current country conditions. That is what we are asking for. I missed the last, half of that last sentence. Oh, that it be remanded in light of current country conditions. On the issue of both asylum and withholding of removal. Yes. And I think, clearly, the Department of State reports show that Chaldeans face a much higher risk than the regular population of being attacked and killed. Half the population, half the Chaldean population has fled the country. And there are recent reports that the terrorists are demanding that they either pay a tax under the Koran, convert to Islam, or be killed. And those are the three choices that they are being given. Your assumption is if it goes back, then the changed country conditions side of things would be, start from scratch. It would be based on both sides would put in whatever evidence there is about current conditions relating to Chaldean Christians. Correct. The burden will shift to the government to prove that it's safe. I understand the burden would be on the government. In these cases, the government is not supplying any evidence to prove that it's safe for Chaldeans to return. Indeed, in the north, where the Kurds reside, the country reports show that non-Muslims are not welcome in that area. I may have to get this from our next, not this government lawyer, because he obviously isn't familiar with this. But the problem I am having is, you were speaking from personal experience of what's going down in San Diego. We have to address this as a matter of jurisprudence. And some of our jurisprudence would suggest that if the government litigated the issue of changed country conditions and failed, even under the conditions as they existed at the time, that we wouldn't, under Ventura, have to remand because the government's already litigated it. Other cases would remand, as you're suggesting. And so I'm, you're saying it's okay to remand and it's quite clear that the government, bearing the burden of proof, and you would come forward before the immigration judge and prove what current country conditions are. That seems like a logical way to proceed, but I'm just wondering if there aren't some jurisprudential hurdles we have to clear in our own jurisprudence. I think an order from this court, Your Honor, which specifically states this respondent faced past persecution, will automatically trigger the next question as to whether country conditions are to return. That much is clear. So that's what we are requesting of the court. Thank you. All right. May it please the court. My name is Ian Hoffman. I represent the respondent of the United States. This case involves Lafe George Moussa, the sister of the previous petitioner. No, brother. Excuse me, the brother of the previous petitioner. And Mr. Moussa left northern Iraq after serving six years in the Iraqi army, left his family and came to the United States. The immigration judge in August of 2003 found that Moussa's application for asylum did not possess the ring of truth. The board affirmed the IJ's ruling in March of 2005, and in June of 2005 the board denied Moussa's motion to reopen and remand. Well, we don't care what the IJ said about his credibility because the BIA didn't buy that. It said it couldn't affirm his adverse credibility finding under our jurisprudence. So this is really just a question case involving changed country conditions, isn't it? Yes, Your Honor. And in the motion to reopen and remand, Mr. Moussa failed to file a petition for review with the Board of Immigration Appeals. And failing to file that petition for review is jurisdictional. And therefore, he should not be able to raise that claim here today. Well, we can still review the underlying decision and make a conclusion that on the record, that was before the BIA at the time, that it didn't, that the government didn't carry its burden. We could make that determination. Absolutely, Your Honor. If we made that determination, what relief would we, what would be the relief, the remedy? If you were to determine which, Your Honor? If we were to accept the BIA's finding that adverse credibility was not established, therefore, the petitioner's testimony was true, and the implicit finding that he had established past persecution because the board does assume the government had the burden, and based on the evidence before the IJ, we disagree that the government carried its burden to show changed country conditions, that the BIA erred in that respect. Therefore, what happens? What's the relief that the petitioner's entitled to? A remand or entry of an order which says that asylum, he is qualified for asylum, remand for consideration of asylum, and that he is also qualified for statutory, mandatory presumption of entitlement to withholding of removal. If you were to determine, Your Honor, that the government had not met its burden to show a fundamental change in circumstances or the possibility of internal relocation, then I don't think a remand would be appropriate. Right. But to make that determination, of course, would find that the evidence on the record compels an opposite result from the record. No, we understand that. Okay. But assuming we did that, then remand wouldn't be necessary. I believe that's correct, Your Honor. Okay. But that should be a tough determination to make because to determine that the evidence on the record compels an opposite conclusion because the persecution that the petitioner argues was all at the hands of the Ba'ath Party, and, of course, the Ba'ath Party is no longer in control in Iraq, and the Ba'ath Party has not been in control. That may be true, but to the extent the Sunnis represent the Ba'ath Party and that there are Sunni insurgents, what do we do with that? The second option, Your Honor, is internal relocation to northern Iraq where, according to the evidence on the record, there has not been violence against Christians in northern Iraq. So you think that what we should do in this situation is not take a look at the current conditions that everybody is quite aware of extrajudicially, if you will, not part of this record, but that if it did go back for reopening, as counsel for petitioners suggested, would clearly become part of the record. You want us to affirm the BIA on the ground that the government carried its burden, even in the face of probable evidence that that doesn't really reflect what's going on today. I'm suggesting that's one option, Your Honor. If this panel chooses to take judicial notice of facts that are not in the record, then that's certainly your prerogative, and you may reach a different conclusion if you do that. Can I ask just one sequential question? Yes. Do you agree with petitioners' counsel that the BIA's denial of Lathe's motion to reopen occurred after the petition for review was filed with his court? Yes, Your Honor. And, yes, and I also would point out what the petitioner did not point out, is that he failed to seek review of the denial of the motion to reopen and remain. What should a petitioner counsel do in that circumstance? He needs to seek a petition for review. File a second petition for review? That's the state of the law as I understand it, Your Honor. It's not enough to alert this court through the excerpts of record, as was done here, that that decision has been made? It is not enough, Your Honor. That's how the law stands. Can you point to any prejudice that the government would suffer if we were to consider the BIA's decision not to reopen? No, Your Honor. Okay. Thank you. And you don't, the government has no, sees no problem as far as the court's authority to take judicial notice of the existing condition? I don't know if you have that authority or not, Your Honor. I would assume you do, but, honestly, I don't know the answer to that. Is that what GAFOR says? I don't, I do not know the answer. Is it? I'm sorry? Have you ever read GAFOR? I have not read that, Your Honor. Double O-R? No, Your Honor. Okay. You know, I appreciate the awkward position you've been put in, but I just, among other judges of the circuit, met with the Department of Justice supervisors and the supervising appellate attorneys of all of the districts in our circuit, and they asked us for our views about government argument. And you have been very candid to express your limitations, but I think it is a disservice to the United States and to the issues that are here to have you put in the position of having to be the representative of the United States in these very important cases. This is not your area. Now, we used to get them through AUSAs who were drafted into this kind of service. There is, in the Department of Justice, a unit that specializes in these cases. I expect we're going to hear from them. But I'm going to request that you make sure that your superiors in the Department of Justice understand that you are getting a very tolerant panel here. I sat on a panel in Seattle where the representative of the Department of Justice had her head handed to her by the presiding judge of that panel, and she was accused, essentially, of incompetence and malpractice. Now, I don't like the idea of the Department of Justice sending people out to represent the department on such a case. And maybe it was the fortuity of the way these came up that you can't follow behind a DOJ representative who knows more about this area and these cases. But that's something the Department of Justice also had within its control, to ask us to prioritize whoever was going to be arguing. But I have found that you were unable to give us the kind of responses that at least this judge finds necessary to address these very serious issues. And I hope the Department of Justice takes that message to heart and doesn't ever do that again in this circuit, not what this judge is saying. And I'm not blaming you, but I do blame your superiors. I'll pass that message along, Your Honor, and I'll let you know that the policy has stopped at oil, and they've hired new immigration attorneys, and the cases that are working their way through the pipeline are at an end now. It's not fair to you, because immigration law is almost as complex as income tax law. Or antitrust law. Well, antitrust law is complex, and that's true. But it's not fair to you, it's not fair to the system. I appreciate your candor, and I understand the situation you're in, and I have no criticism of you whatsoever. I think you handled yourself admirably, and there is a change afoot, at least that's what we hear. And Judge Fisher served as a high-ranking person in the Justice Department, and so he's got a lot more experience. Well, I've had none in that department. So, anyway, these are not easy cases, and maybe we'll wake up someday, and hope it's soon, and start handling these cases with a little compassion. But I appreciate your work here today. I thank the Court for its... I don't want you to feel bad when you leave. How old are you? Thirty-nine, Your Honor.  So, but I think what Judge Hawkins said is important, and you ought to let your views on this known, because we're doing a lot of bad things, and someday I think we're going to look back on this as not a shining period in our history. Yeah. Thanks a lot. I thank the Court for its time and indulgence. Thank you. You know, why don't you just sit down? No, Your Honor. You've already fouled up enough, and we're going to come here, and we're going to do the best we can to patch things up. Just one point as to jurisprudence, Your Honor. You mentioned jurisprudence, Your Honor. If you read the Board's decision, they didn't decide whether to separate past persecution. I've got the Board's decision open in front of me right here. I do read it. I've got it underlined, highlighted, analyzed. I understand that. You can use the same language in two different cases. So, thank you. So, if the Board had made that decision yesterday, this Court could still decide that the past persecution wasn't decided, and that is the basis for remand. Thank you. Okay. All right. Let's go to the next matter. Oma v. Gonzales.
judges: Pregerson, Hawkins, Fisher